*CLEVELAND, C. C. & ST. L. RY. v. BARRON-BOYLE CO.

CONSTRUCTION OF CONTRACT BY CARRIER UPON DISCOVERY OF DAMAGES TO GOODS SHIPPED OVER CONNECTING LINES MAKING IT LIABLE THEREFOR.

The last of several connecting carriers delivering goods in damaged condition, having receipted in turn to its next preceding carrier for the good order and condition of the goods, demanding and receiving freight in full form originating point to that of delivery, making no claim of separate contracts with several connecting lines and agreeing that consignees file their claim for damages with it, recognizes but one contract for transportation; and being unable to show that the injuries complained of were caused by other agencies beyond its control, a judgment for the amount of damages admitted will not be set aside.

[Syllabus approved by the court.]

ERROR to Hamilton common pleas court.

---

*Affirmed by Supreme Court, without report, *Clev. C. C. & St. L. Ry. v. Barron-Boyle Co.* 80 Ohio St. 707.

Journal entries and findings of fact and law by Judge Hunt of the common pleas:

This cause came on to be heard upon the petition of the plaintiff [Barron-Boyle Company], the answer and amended answer of the defendant [Cleveland, C. C. & St. L. Ry.] and the reply of the plaintiff, the depositions of the defendant, on file herein, and upon an agreed statement of facts entered into between the parties, plaintiff and defendant, on file herein, there being no other testimony offered by either of the parties, and upon the arguments of briefs of counsel for the parties, the intervention of a jury being by the said parties waived in open court and was submitted to the court.

Upon consideration whereof the court find upon the issues joined the following facts:

"On or about October 30, 1902, the plaintiff procured to be shipped to it at Cincinnati, Ohio, from Antwerp, Belgium, 1,649 cases of window glass in 1,521 packages in apparent good order and condition under a bill of lading of said date in and upon the Steamship "Storm King" and by said steamship to be delivered to the American Express Company at Boston, and by it re-forwarded thence in bond by rail or otherwise at ship's expense and shipper's risk to Cincinnati, Ohio, and there delivered to order.

"That said goods were delivered by said steamship to said American Express Company and by it to the Boston & Maine Railroad Company and thence by the said Boston & Maine Railroad Company to other connecting carriers, said goods coming into the hands of the defendant at Cleveland, Ohio, in sealed cars and in bond.

"That said cars while in the hands of the defendant were not opened and the contents thereof examined before the same arrived at Cincinnati.

"That said cars were handled by the defendant in the usual manner in which freight cars are handled and suffered no accident nor any rough handling beyond what is usual in the ordinary handling of freight cars in railway service.

"That upon opening the said cars at Cincinnati certain window glass in said shipment of the value of $1,212.90, the property of the plaintiff, was found upon joint checking, made by the parties hereto, to be broken and destroyed.

"That there is no evidence tending to show that said glass was improperly packed or that said loss and damage was caused by dangers of the sea.

Hamilton County.

"'That the defendant company and each of its predecessors in the chain of connecting carriers receipted for said shipment when the same came into its hands as in apparent good order and condition.

"That the freight charge was specially agreed upon by the parties; that it covered through transportation from Antwerp to Cincinnati; that the amount thus agreed upon was paid by the defendant and divided among the various lines in the chain of connecting carriers from Antwerp to Cincinnati.

"'The court further find as a fact that certain cases of said shipment were found to rattle when they were delivered to the Boston & Maine Railroad at Boston but that said cases were not opened nor any other means employed to determine whether said rattling was caused by the contents being broken, and said rattling cases were receipted for as in apparent good order and condition.

"The court further find that there is no evidence identifying the cases rattling at Boston with the cases containing broken glass on arrival of the shipment at Cincinnati.

"The court, therefore, find, as a conclusion of fact, that the testimony tending to show that certain cases rattled at the time of delivery to the Boston & Maine Railroad, there being no direct evidence to show that said rattling was caused by breakage, together with a receipt to said Boston & Maine Railroad and subsequent connecting carriers down to the defendant that said shipment was in apparent good order and condition are insufficient to show that said breakage occurred prior to the time that said shipment came into the hands of the defendant carrier.''

As a conclusion of law, the court find that when the last or delivering carrier in a chain of connecting carriers delivers goods which it had receipted for in apparent good order and condition and is unable to show that the injuries complained of were caused by superhuman agencies or other agencies beyond the control of defendant, or in whose hands the goods were at the time the injuries occurred, and where, as was the case here, the freight was entire from originating point to point of delivery to be apportioned among the several carriers, the law presumes the injuries to have occurred while the goods were in the hands of the last carrier unless such presumption is rebutted or removed; and the court find that the defendant here has failed to rebut or remove such presumption.

It is, therefore, considered and adjudged by the court that the plaintiff recover from the defendant the sum of $1,528.25 with interest from April 1, 1907, and costs herein taxed at $————.

Railway v. Barron-Boyle Co.

To all of which the defendant excepts.

This cause coming on to be heard upon the motion of defendant to set aside the finding and judgment of the court heretofore entered herein and for a new trial, and having been argued by counsel and submitted to the court, the court having been advised thereon doth find that said motion is not well taken. Wherefore it is adjudged that said motion be and the same is hereby overruled.

**Harmon, Colston, Goldsmith & Hoadly**, for plaintiff:

Cited and commented upon the following authorities: Hutchison, Carriers Sec. 1348; *Morgantown Mfg. Co. v. Railway*, 121 N. C. 514 [28 S. E. Rep. 474; 61 Am. St. Rep. 679]; *Moore v. Railway*, 173 Mass. 335 [53 N. E. Rep. 816; 73 Am. St. Rep. 298]; *Klunk v. Railway*, 74 Ohio St. 125 [77 N. E. Rep. 752]; *Gibbs v. Bank*, 123 Iowa 736 [99 N. W. Rep. 703].

**C. L. Hopping** and **W. M. Tugman**, for defendant:

Cited and commented upon the following authorities: *Klunk v. Railway*, 74 Ohio St. 125 [77 N. E. Rep. 752]; *Baltimore & O. Ry. v. Campbell*, 36 Ohio St. 647 [38 Am. Rep. 617]; *Clev. C. C. & I. Ry. v. Welch*, 1 O. S. U. 76 (23 Bull. 62).

**SWING, J.**

We are of the opinion that the agreed statement of facts in this case shows that there was but one contract for the transportation of the goods from Boston to Cincinnati through the American Express Co. over the Boston & M. Ry., the New York Cent. Ry., the Lake Shore & M. S. Ry. and the Clev. C. C. & St. L. Ry., and that separate contracts were not made with the several railroads for transportation of the goods over said different railroads. This is clearly shown by testimony of agent, Smith (bill of exceptions, page 12). And when the damage to the goods was discovered at Cincinnati no claim was made by the railroad company that there were separate contracts.

But Barron-Boyle & Co., by the request of the railroad company, paid the amount of the freight in full to said company, and by agreement of the parties filed their claim for damage with the said railroad company, thus clearly recognizing the fact that there was but one contract for transportation from Boston to Cincinnati. This must have been the construction that the parties placed upon the contract at the time. When the goods arrived at Cincinnati they were damaged.

There is nothing to show when, where or how they were damaged, except that certain of the employes of the Boston & M. Railway who loaded the glass in the cars at "Mystic Wharf," testified that some of the boxes rattled in loading and some of the boxes were strained, but no examination was made to ascertain whether any of the glass was broken. It was admitted that each carrier gave to its predecessor a receipt, stating that the goods were received in good order. It was first ascertained that the goods were damaged when the goods were inspected after arrival at Cincinnati. The contract of the carrier was to deliver the goods in good order at Cincinnati, subject to certain exceptions, none of which are set up here, and it is admitted that the goods were not delivered in good order, and the amount of the damage is admitted, and it is agreed that the judgment of the court below was for this amount. It seems to us clearly a breach of contract for which the railroad company was liable and the judgment should be affirmed.

**Giffen** and **Smith, JJ.,** concur.